## UNITED STATES OF AMERICA *EX REL.* SHARON MCKINNEY V. DHS TECHNOLOGIES, LLC, *ET AL.*, CIV. NO. 3:CV-11-146.

### SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the General Services Administration, the Department of Defense, and the Department of the Army (collectively, the "United States"), DHS Technologies LLC and its subsidiary, DHS Systems LLC (collectively, "DHS"), A. Jon Prusmack, Irving I. Cohen, Nelson A. Weinstein, Samuel R. Marrone, and John Bohrman (collectively, with DHS, the "Defendants"), and Sharon McKinney (the "Relator") (hereafter collectively, referred to as the "Parties"), through their authorized representatives.

### PREAMBLE

A. DHS is a business entity that manufactures products offered for sale to the United States under General Services Administration (GSA) Multiple Award Schedule (MAS) contract No. GS-07F-8645C (referred to as "the MAS contract" or "the contract"). The products offered included trailer mounted support systems (TMSS) in both medium and large sizes as well as boot wall systems. These products are trailer mounted and mobile shelters with military and civilian applications.

B. On January 19, 2011, Relator Sharon McKinney filed a *qui tam* action in the United States District Court for the Middle District of Pennsylvania captioned *United States ex rel. Sharon McKinney v. DHS Technologies LLC et al.*, Civ. No. 3:CV-11-146, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). The United States partially intervened on July 10, 2014 with respect to the allegation that DHS failed to

disclose and offer to the government better prices than it offered Northrop Grumman (NG), a commercial customer.

C. The United States contends that it has certain civil claims against Defendants arising from DHS failing to notify GSA about discounted pricing that it offered to NG related to products sold to NG for resale to the United States from April 1, 2007 through February 4, 2013, caused the United States to pay higher prices for medium and large TMSS and boot wall systems purchased under the MAS contract than it would have had it known of the pricing DHS offered to NG. The United States further contends that it has certain civil claims against Defendants for this conduct, which is referred to below as the Covered Conduct.

D. This Agreement is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded.

E. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. a. DHS agrees to pay the United States $1,900,000.00 (Settlement Amount) over two (2) years (eight (8) quarters) together with interest on the unpaid principal balance at the rate of 3 percent per annum (accruing from June 1, 2014), in accordance with the following schedule:

| QUARTER | PAYMENT | PRINCIPAL | INTEREST | BALANCE |
|---|---|---|---|---|
| | | | | $1,900,000.00 |
| 1 | $245,585.50 | $231,335.50 | $14,250.00 | $1,668,664.50 |
| 2 | $245,585.50 | $233,070.51 | $12,514.98 | $1,435,593.99 |
| 3 | $245,585.50 | $234,818.54 | $10,766.95 | $1,200,775.45 |
| 4 | $245,585.50 | $236,579.68 | $9,005.82 | $964,195.77 |
| 5 | $245,585.50 | $238,354.03 | $7,231.47 | $725,841.74 |
| 6 | $245,585.50 | $240,141.68 | $5,443.81 | $485,700.06 |
| 7 | $245,585.50 | $241,942.75 | $3,642.75 | $243,757.32 |
| 8 | $245,585.50 | $243,757.32 | $1,828.18 | — |
| TOTAL | $1,964,683.97 | $1,900,000.00 | $64,683.97 | |

Payment will be made by electronic funds transfer pursuant to instructions provided by the United States Attorney's Office for the Middle District of Pennsylvania's Financial Litigation Unit. Specific dates for payment will be set by the United States Attorney's Office for the Middle District of Pennsylvania's Financial Litigation Unit, after the execution of this agreement, in accordance with the above schedule. On the Effective Date of this Agreement, as defined in paragraph 23, Defendants will make their first payment to the United States in the amount of $245,585.50.

  b. DHS has the right to prepay the outstanding principal balance of the Settlement Amount, or any portion thereof, at any time, without penalty. In the case of such payment, the balance due on the date paid will reflect only the remaining principal plus accrued interest through the actual date of payment.

  c. If DHS fails to pay any amount due within five (5) business days after the scheduled due date, DHS will be in default of its payment obligations under this Agreement. Upon written notice of default by the United States, DHS will have ten (10) business days after the date of receipt of notice to cure the default. Notice will be delivered to:

Howard Stanislawski
Sidley Austin LLP
1501 K St. NW
Washington, DC 20005
Fax (202) 736-8711

If DHS fails to cure the default within ten (10) business days after the date of receiving notice, the remaining unpaid balance of the Settlement Amount will become immediately due and payable at the option of the United States. Interest will accrue on the then-outstanding balance (including principal and unpaid but accrued interest), at the rate of 10 percent per annum, compounded quarterly, from the date defaulted payment was due through and including the date of payment in full. In addition, the United States may pursue any remedies it may have under applicable laws. Notice may be made by any means that provides confirmation of transmission, including facsimile, and confirmation of transmission will be sufficient to prove receipt of notice by DHS. The lack of written Notice of Default does not constitute a waiver of the default by the United States, or of any previous or subsequent defaults, and does not constitute a waiver of any other rights or obligations of any party to this Agreement, including DHS's obligation to make future payments in accordance with this Agreement.

2. Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, the United States releases DHS (together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions and subdivisions, current or former owners, and current and former officers, directors, managers, employees and affiliates, and the successors and assigns of any of them), A. Jon Prusmack, Irving I. Cohen, Nelson A. Weinstein, Samuel R. Marrone, and John Bohrman from any civil or administrative monetary claim the United States has under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Contract Disputes Act, 41 U.S.C. § 7101 et seq.; any statutory provision creating a cause of action for civil damages or penalties for which the

Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, 0.45(d); or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud, for the Covered Conduct.

3. Conditioned upon the United States receiving the Settlement Amount payments from DHS, the United States agrees that it shall pay to Relator by electronic funds transfer 19 percent of each such payment received under the Settlement Agreement as soon as feasible after receipt of the payment.

4. Subject to the exceptions below, Relator, for herself and for her heirs, successors, executors, administrators, attorneys, agents, and assigns, releases DHS (together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions and subdivisions, current or former owners, and current and former officers, directors, managers, employees and affiliates, and the successors and assigns of any of them), A. Jon Prusmack, Irving I. Cohen, Nelson A. Weinstein, Samuel R. Marrone, and John Bohrman from any civil monetary claim the Relator has, whether on behalf of the United States or for her own account, for the allegations in the Civil Action except for her claims that DHS falsely certified that it qualified as a "small business" to receive contracts that were "set aside" for small businesses, her retaliation claim under 31 U.S.C. § 3730(h), and any claim for attorney's fees and costs.

5. Relator, for herself and for her heirs, executors, administrators, successors, attorneys, agents, and assigns, fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Relator has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and

servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

6. Notwithstanding any term of this Agreement, the United States does not release DHS from the following:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    g. Any liability for failure to deliver goods or services due;

    h. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

    i. Any liability of any individual not expressly identified in Paragraph 2 above.

7. Relator and her heirs, executors, administrators, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

8. DHS (together with its current and former parent corporations; direct and indirect subsidiaries, brother or sister corporations, divisions and subdivisions, current or former owners, and current and former officers, directors, managers, employees and affiliates, and the successors and assigns of any of them), A. Jon Prusmack, Irving I. Cohen, Nelson A. Weinstein, Samuel R. Marrone, and John Bohrman waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. DHS (together with its current and former parent corporations; direct and indirect subsidiaries, brother or sister corporations, divisions; current or former owners, and officers, directors, managers and affiliates, and the successors and assigns of any of them), A. Jon Prusmack, Irving I. Cohen, Nelson A. Weinstein, Samuel R. Marrone, and John Bohrman fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that they have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. DHS (together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations; divisions and subdivisions, current or former owners,

and officers, directors, managers, employees and affiliates, and the successors and assigns of any of them), A. Jon Prusmack, Irving I. Cohen, Nelson A. Weinstein, Samuel R. Marrone, and John Bohrman fully and finally release the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that they have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

11.    a)    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of DHS (together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them), A. Jon Prusmack, Irving Cohen, Nelson Weinstein, Samuel R. Marrone, and John Bohrman in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees,

8

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

      b.     Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

      c.     Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants from the United States. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

12.     This Agreement is intended to be for the benefit of the Parties only.

13.     Upon receipt of the first payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Partial Dismissal of the Civil Action pursuant to Rule 41(a)(1).

14.     Each party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, with the exception of Relator's attorney fees and costs, if any, as provided by 31 U.S.C. § 3730(d).

15. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Pennsylvania. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

21. This Agreement is binding on Relator's successors, executors, administrators, transferees, heirs, and assigns.

22. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles/electronic mail copies of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE PAGES FOLLOW]

THE UNITED STATES OF AMERICA

PETER J. SMITH
UNITED STATES ATTORNEY

DATED: 12/4/2014    BY: _____
                    TIMOTHY S. JUDGE
                    ASSISTANT UNITED STATES
                    ATTORNEY, MIDDLE DISTRICT OF
                    PENNSYLVANIA


SHARON MCKINNEY – RELATOR

DATED: 10 November 2014   BY: _____
                         SHARON MCKINNEY

DATED: Nov 17, 2014   BY: _____
                     REGINA POSERINA, ESQ.
                     COUNSEL FOR RELATOR

DEFENDANTS:

DHS TECHNOLOGIES LLC/DHS SYSTEMS LLC

DATED: 11/10/14   BY: _/s/ Samuel R. Marrone_____
SAMUEL R. MARRONE
~~CHAIRMAN~~ AND CEO, PRESIDENT
DHS TECHNOLOGIES LLC/
DHS SYSTEMS LLC

DATED:_____   BY:_____
HOWARD STANISLAWSKI, ESQ.
COUNSEL FOR DHS

DATED:_____   BY:_____
A. JON PRUSMACK

DATED:_____   BY:_____
IRVING I. COHEN

DATED: 11/10/14   BY: _/s/ Nelson A. Weinstein_____
NELSON A. WEINSTEIN

DATED: 11/10/14   BY: _/s/ Samuel R. Marrone_____
SAMUEL R. MARRONE

DATED: 11/10/14   BY: _/s/ John Bohrman_____
JOHN BOHRMAN

~~[END OF DOCUMENT]~~

12

DEFENDANTS:

DHS TECHNOLOGIES LLC/DHS SYSTEMS LLC

DATED:_____  BY:_____
                           SAMUEL R. MARRONE
                           CHAIRMAN AND CEO,
                           DHS TECHNOLOGIES LLC/
                           DHS SYSTEMS LLC

DATED: 11/7/2014  BY: _/s/ Howard Stanislawski_____
                           HOWARD STANISLAWSKI, ESQ.
                           COUNSEL FOR DHS

DATED:_____  BY:_____
                           A. JON PRUSMACK

DATED:_____  BY:_____
                           IRVING I. COHEN

DATED:_____  BY:_____
                           NELSON A. WEINSTEIN

DATED:_____  BY:_____
                           SAMUEL R. MARRONE

DATED:_____  BY:_____
                           JOHN BOHRMAN

[END OF DOCUMENT]

13

DEFENDANTS:

DHS TECHNOLOGIES LLC/DHS SYSTEMS LLC

DATED:_____ BY:_____
SAMUEL R. MARRONE
CHAIRMAN AND CEO,
DHS TECHNOLOGIES LLC/
DHS SYSTEMS LLC


DATED:_____ BY:_____
HOWARD STANISLAWSKI, ESQ.
COUNSEL FOR DHS

DATED: 11/11/14 BY: _/s/ A. Jon Prusmack_____
A. JON PRUSMACK


DATED:_____ BY:_____
IRVING I. COHEN


DATED:_____ BY:_____
NELSON A. WEINSTEIN


DATED:_____ BY:_____
SAMUEL R. MARRONE


DATED:_____ BY:_____
JOHN BOHRMAN

[END OF DOCUMENT]

14

DEFENDANTS:

DHS TECHNOLOGIES LLC/DHS SYSTEMS LLC

DATED:_____ BY:_____
SAMUEL R. MARRONE
CHAIRMAN AND CEO,
DHS TECHNOLOGIES LLC/
DHS SYSTEMS LLC


DATED:_____ BY:_____
HOWARD STANISLAWSKI, ESQ.
COUNSEL FOR DHS


DATED:_____ BY:_____
A. JON PRUSMACK


DATED: 11/16/17 BY:_____
IRVING I. COHEN


DATED:_____ BY:_____
NELSON A. WEINSTEIN


DATED:_____ BY:_____
SAMUEL R. MARRONE


DATED:_____ BY:_____
JOHN BOHRMAN

[END OF DOCUMENT]

p. 15